## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**BRETT KEMNOW**                                         **PLAINTIFF**

**V.**                      **NO. 4:23CV00331-BSM-PSH**

**MARTIN O'MALLEY,**
**COMMISSIONER of the**
**SOCIAL SECURITY ADMINISTRATION**            **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I.  Introduction:

Plaintiff, Brett Kemnow, applied for Title II disability and disability insurance benefits on November 29, 2015. (Tr. at 1144). In the application, Ms. Kemnow alleged disability beginning on October 24, 2014. *Id*. After conducting a hearing on

1

December 20, 2017, an Administrative Law Judge ("ALJ") denied Ms. Kemnow's application. (Tr. at 94-104). The Appeals Council remanded the ALJ's decision for further review, urging a more thorough analysis of Ms. Kemnow's mental impairments. (Tr. at 110-112, 190, 1144).

After a second hearing, an ALJ again found that Ms. Kemnow was not disabled. (Tr. at 36-60, 117-135, 1144). Ms. Kemnow sought judicial review. On March 22, 2022, this Court remanded the ALJ's decision for further review, finding that the ALJ had not given full consideration to Ms. Kemnow's diagnosis of fibromyalgia. (Tr. at 1194-1202). A third hearing was held, and another ALJ again denied Ms. Kemnow's application for benefits. (Tr. at 1144-1161). This decision stands as the final decision of the Commissioner, and Ms. Kemnow has requested judicial review.

For the reasons stated below, this Court should affirm the ALJ's decision and enter judgment for Defendant.

## II.    <u>The Commissioner's Decision</u>:

The ALJ found that Ms. Kemnow last met the insured status requirement of the Social Security Act on June 30, 2020. (Tr. at 1147). The ALJ next found that Ms. Kemnow had not engaged in substantial gainful activity from the alleged onset date of October 24, 2014 through the date last insured. (Tr. at 1147). At Step Two, the

ALJ found that Ms. Kemnow had the following severe impairments: fibromyalgia, degenerative disc disease, obesity, depression, anxiety, and post-traumatic stress disorder. *Id*.

After finding that Ms. Kemnow's impairments did not meet or equal a Listing,[1] the ALJ determined that Ms. Kemnow had the residual functional capacity ("RFC") to perform work at the light exertional level, with the following additional limitations: (1) she could perform simple, routine, repetitive tasks involving one-to-two steps with an ability to make simple work-related decisions; (2) she could have occasional interaction with coworkers, supervisors, and the public; (3) she has the ability to maintain attention and concentration for two-hour intervals in an eight-hour workday; (4) she could adapt to routine changes where such changes are few and infrequent; and (5) she should take appropriate precautions to avoid workplace hazards. (Tr. at 1147-1151).

The ALJ determined that, through the date last insured, Ms. Kemnow was unable to perform any past relevant work. (Tr. at 1159). At Step Five, the ALJ relied on the testimony of a Vocational Expert (VE) to find that, considering Ms. Kemnow's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform, such as merchandise

---

[1] 20 C.F.R. Part 404, Subpart P, Appendix 1.

marker, photocopy machine operator, and routing clerk. (Tr. at 1160-1161). Thus, the ALJ found that Ms. Kemnow was not disabled from October 24, 20214 through June 30, 2020. *Id*.

## III. **Discussion**:

### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary

sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'"
*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co.
v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant
evidence as a reasonable mind might accept as adequate to support a conclusion.'"
*Id*.

It is not the task of this Court to review the evidence and make an independent
decision. Neither is it to reverse the decision of the ALJ because there is evidence in
the record which contradicts his findings. The test is whether there is substantial
evidence in the record as a whole which supports the decision of the ALJ. *Miller*,
784 F.3d at 477.

B.    Ms. Kemnow's Arguments on Appeal

Ms. Kemnow contends that the evidence supporting the ALJ's decision to
deny benefits is less than substantial.[2] She argues that the ALJ's consideration of
fibromyalgia at Step Three was deficient and that the ALJ did not properly evaluate
APRN Melanie Sterling's medical opinion. Finally, she contends that the ALJ did
not fully consider Ms. Kemnow's subjective complaints of pain.

---

[2] Ms. Kemnow first makes broad arguments that the administrative review process is defective
generally. The Court finds no support for this proposition. See *Wilburn v. Astrue*, 626 F.3d 999,
1003 (8th Cir. 2010); *Efinchuk v. Astrue*, 480 F.3d 846, 848-49 (8th Cir. 2007) ("Nothing about
the proceedings . . . shows the procedural safeguards were constitutionally inadequate . . . .").

The ALJ thoroughly discussed Ms. Kenmow's medical conditions. He noted her symptoms of fibromyalgia and conservative treatment for it. (Tr. at 1150-1158). He discussed the clinical objective findings showing degenerative disc disease. *Id*. He observed that Ms. Kemnow was obese, but carefully explained why obesity, in connection with her other impairments, did not support a finding of disability. *Id*. Finally, the ALJ discussed Ms. Kenmow's mental impairments and her ability to perform daily activities. *Id*.

Ms. Kenmow first argues that she met a Listing for fibromyalgia.[3] There is not a directly correlated Listing for fibromyalgia. But the Administration evaluates equivalency and severity under Listing 14.09D (inflammatory arthritis). See Soc. Sec. Ruling 12-2p, 2012 WL 3104869, at *6. That Listing requires:

A. Persistent inflammation or persistent deformity of:

1. One or more major peripheral joints in a lower extremity (see 14.00C8) and medical documentation of at least one of the following:
A documented medical need (see 14.00C6) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or
An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements

---

[3] The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal citations omitted).

The remand order from this Court instructed an ALJ to further address fibromyalgia at Step Three. (Tr. at 1194-1204).

(see 14.00C7), and a documented medical need (see 14.00C6) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or

2. One or more major peripheral joints in each upper extremity (see 14.00C8) and medical documentation of an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 14.00C7).

OR

B. Inflammation or deformity in one or more major joints of an upper or a lower extremity (see 14.00C8) with:

1. Involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and

2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

OR

C. Ankylosing spondylitis or other spondyloarthropathies, with:

1. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or

2. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.

7

OR

D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1. Limitation of activities of daily living.

2. Limitation in maintaining social functioning.

3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Part 404, Subpart P, Appendix 1, 14.09.

The ALJ recognized that Ms. Kemnow had fatigue and tenderness in her joints and that she took medication to relieve her symptoms. (Tr. at 1151-1154). Ms. Kemnow said that medication was somewhat effective, but she still had pain. (Tr. at 996-1006). Her rheumatologist recommended conservative treatment like massage, yoga, and aerobic exercise.[4]  (Tr. at 660). On November 17, 2015, Ms. Kemnow told her PCP that she had no issues with her medications. (Tr. at 64, 78, 820). In 2017, a second rheumatologist advised physical therapy and deferred further care to Ms. Kemnow's PCP. (Tr. at 960). Ms. Kemnow told her PCP in 2019 that her symptoms

---

[4] The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

were well-controlled. (Tr. at 1007).[5]  In February 2021, Ms. Kemnow told her pain

management specialist that her medications improved her pain by 50% for up to 6

hours at a time. (Tr. at 1433).

On multiple occasions, clinical musculoskeletal exams showed no

signification deformities of gait, strength, or reflexes. (Tr. at 861, 950-959, 1154-

1155). Ms. Kemnow could heel-toe walk and had good range of motion. *Id*.

Ms. Kemnow admitted she could do things like drive, shop in stores, care for

pets, play video games, and visit with her mother.[6]  (Tr. at 330-336, 1150-1152). She

said she had no problems getting along with others. *Id.* Mental status examinations

showed that she had normal memory, judgment, and insight. (Tr. at 952-954, 980-

984, 1051-1059, 1156-1157). Depression and anxiety were moderately well-

controlled on medication. (Tr. at 1155-1156).

At Step Three, the burden rests squarely on the claimant to prove she met a

Listing. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). The claimant must

show that her impairment matches all of the specified medical criteria of a listing.

*Johnston v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). The ALJ properly

---

[5] Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

[6] Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

discussed Ms. Kemnow's fibromyalgia, symptoms, and treatment, and found that she did not meet all of the criteria for any Listing. (Tr. at 1147-1150). Throughout the opinion, the ALJ supported his Step Three conclusion.[7]  There is no error at Step Three.

Ms. Kemnow next alleges that the ALJ did not give proper weight to the opinion of her treating APRN, Melanie Sterling. Ms. Sterling saw Ms. Kemnow ten times from 2015 to 2017. (Tr. at 953-954, 980-984, 1051-1059, 1156-1157). She issued a medical opinion in 2020 (well after her last treatment), which stated Ms. Kemnow would have marked or extreme limitations in a wide variety of mental work functions. (Tr. at 1138-1140). The ALJ gave this opinion some weight. (Tr. at 1159). Ms. Kemnow says he should have given it controlling weight.

Ms. Kenmow initiated her application in 2015. The rules governing how the Administration evaluates opinion evidence changed in March 2017. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). So here, the prior regulations govern. These prior regulations provide that the opinion of a treating medical source is given deference and "is to be given controlling weight where it is supported by acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with other

---

[7] *See Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (an ALJ is not required to elaborate on his Step Three finding when the record, as a whole, supports his conclusion).

substantial evidence in the record." *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003). Providers are divided up into acceptable and non-acceptable sources. As an APRN, Ms. Sterling is not an acceptable medical source, and therefore, her opinion is not entitled to controlling weight. *Blackburn v. Colvin*, 761 F.3d 853, 859 (8th Cir. 2014) (nurse practitioner not an acceptable medical source). Under the prior regulations, the opinions of providers who are not acceptable medical sources do have value and an ALJ can assign them weight based on whether they are supported by other evidence. *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007).

Here, the ALJ gave Ms. Sterling's opinion some weight.[8]  (Tr. at 1158-1159). He discussed the opinion, and he illustrated that Ms. Sterling's own notes showed improvement over the course of her treatment of Ms. Kemnow. *Id*. The ALJ was entitled to discount unsupported portions of Ms. Sterling's opinion. Moreover, the ALJ did limit Ms. Kemnow to simple work functioning in the RFC, indicating he did not fully discount Ms. Sterling's opinion. He properly evaluated the opinion.

Finally, Ms. Kemnow asserts that the ALJ did not fully consider her subjective complaints, especially her pain. The ALJ did discuss the nature and extent of her pain, and her response to treatment. (Tr. at 1152-1158). He wrote about her

---

[8] An ALJ may decline to incorporate any portions of an opinion that he deems inconsistent. See *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000).

medications and their side effects. *Id*. He discussed objective findings, including the reports of pain management experts, as well as Ms. Kemnow's own testimony. *Id*. He also discussed Ms. Kemnow's daily activities. *Id*. Finally, he incorporated the findings of the state-agency medical experts. (Tr. at 1159). They reviewed the records and found that Ms. Kemnow was able to perform light exertional work. (Tr. at 67-70, 81-85). The ALJ fully considered Ms. Kemnow's complaints of pain, and he was not required to consult a separate pain management specialist.[9]

### III.  **Conclusion**:

There is substantial evidence to support the Commissioner's decision that Mr. Barnes was not disabled. The ALJ fulfilled his duty at Step Three and he properly analyzed the medical opinion of Ms. Sterling. Finally, he fairly evaluated Ms. Kemnow's subjective complaints. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 12th day of March, 2024.

_____
UNITED STATES MAGISTRATE JUDGE

---

[9] The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011).